UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RIVERS BEND RV RESORT
AND CAMPGROUND, LLC,

        Plaintiff,

v.

SPECTRUM MID-AMERICA, LLC,

        Defendant.
_____/

Case No. 2:23-cv-107

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendant's motion to dismiss Plaintiff's second amended complaint. (ECF No. 25.)

Plaintiff — Rivers Bend RV Resort and Campground, LLC ("Rivers Bend") — filed suit pursuant to the Sherman Act (15 U.S.C. § 26) and the Clayton Act (15 U.S.C. § 15) on June 19, 2023. In its second amended complaint, Rivers Bend alleges that Defendant — Spectrum Mid-America, LLC ("Spectrum") — "attempted to monopolize the cable, phone, and internet services providers market." (ECF. No. 23, PageID.82.) More specifically, Rivers Bend alleges that after it terminated its commercial contract with Spectrum and entered into a contract with one of Spectrum's competitors, Spectrum began refusing to provide Rivers Bend's guests with individual services.

(*Id.*, PageID.80-81.)  Rivers Bend asserts that Spectrum is attempting to "strong arm" Rivers Bend into dropping its current provider and re-engaging with Spectrum.  (*Id.*)

Spectrum now moves to dismiss, asserting that Rivers Bend's second amended complaint fails to state a claim upon which relief can be granted.  (ECF No. 24.)  Spectrum contends that Rivers Bend's second amended complaint, like its first, fails to state a claim of attempted monopolization because: (1) its proposed geographic market is facially implausible, and (2) it fails to include factual allegations supporting Spectrum's supposed market power.  (*Id.*, PageID.98.)  Spectrum further contends that Rivers Bend lacks antitrust standing because it has not pleaded a non-speculative injury stemming from a competition-reducing aspect or effect of Spectrum's conduct.  (*Id.*, PageID.102.)

In response, Rivers Bend asserts that a suit should only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (ECF No. 27, PageID.117 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).)[1]  Rivers Bend argues that the Sherman Act is broad enough to encompass Spectrum's retaliatory refusal to provide Rivers Bend's guests with individual services upon the termination of Rivers Bend's commercial contract with Spectrum.  (*Id.*, PageID.199.)  And Rivers Bend contends that this

---

[1]   The Supreme Court explicitly rejected this standard in 2007.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").  This Court noted as much during the Rule 16 conference held on November 2, 2023.  (ECF No. 29, PageID.147.)

Court "effectively already found that Plaintiff has antitrust standing as a consumer." (*Id.*, PageID.120.)

The undersigned respectfully recommends that the Court grant Spectrum's motion to dismiss (ECF No. 25) because Rivers Bend has not plausibly alleged a dangerous probability of Spectrum achieving monopoly power within the relevant market. Furthermore, Rivers Bend has not plausibly alleged an antitrust injury sufficient to establish antitrust standing.

## II.    Background

Rivers Bend operates a campground in Iron Mountain, Michigan containing 130 campsites. (ECF No. 23, PageID.80.) Many guests that visit Rivers Bend are seasonal guests who return year after year.

According to Rivers Bend, its campground has very few options for cable, internet, and telephone services. (*Id.*) For fifteen years, Rivers Bend utilized Spectrum, offering Spectrum's basic services to its guests free of charge. If guests desired more cable options or faster internet during this time, they had the option to pay for Spectrum's individual services. (*Id.*) But Rivers Bend says that it recently terminated its commercial contract with Spectrum, opting instead to receive services from Spectrum competitor Verizon Wireless. (*Id.*)

After terminating its contract with Spectrum, Rivers Bend says that Spectrum began retaliating against it by refusing individual services to Rivers Bend's guests. Rivers Bend alleges that eight of its seasonal guests either had their services terminated or were refused new services by Spectrum. (*Id.*) In one instance,

Spectrum installed individual services for a guest and then terminated the services just one week later. Before terminating the services, Spectrum called Rivers Bend and explained that no one in the campground would be permitted to obtain Spectrum services going forward. (*Id.*, PageID.80-81.) According to Rivers Bend, the only way its guests can receive Spectrum services is if it renews its commercial contract with Spectrum. (*Id.*, PageID.81.)

Spectrum concedes that it no longer provides individual services to Rivers Bend's guests. (ECF No. 25, PageID.94.) However, Spectrum contends that its decision is not retaliatory or anticompetitive in nature. Rather, Spectrum says that its decision not to provide individual services to Rivers Bend's guests is a simple business decision based on the cost and complexity of installing services at campgrounds, the transient nature of campground guests, the potential turnover of transient customers, and the credit risks posed by transient customers. (*Id.*)

### III.  Relevant Procedural History

Rivers Bend filed its original complaint on June 19, 2023, in the United States District Court for the Eastern District of Michigan. (ECF No. 1.) After finding that the proper venue was the Western District of Michigan, the court transferred the case to this Court. (ECF No.3, PageID.14.) Rivers Bend then amended its complaint to reflect that it was filed in this Court, after which Spectrum moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9.)

4

On November 2, 2023, the Court held a Rule 16 conference during which the parties discussed Spectrum's motion to dismiss the first amended complaint. (ECF No. 29 (Tr. of Nov. 2, 2023, Hr'g).) The Court noted that the core issues presented by the motion were: (1) whether the complaint set forth an injury in fact sufficient to establish Article III standing, and (2) whether the complaint sufficiently articulated a plausible antitrust claim under State or Federal law. (*Id.*, PageID.146-147.)

After hearing from the parties, the Court explained that the complaint appeared to set forth plausible allegations of Article III injury. (*Id.*, PageID.146.) However, the first amended complaint lacked plausible allegations of antitrust injury. (*Id.*, PageID.147 ("[T]here do need to be allegations that establish . . . antitrust injury, which I think are lacking under the current articulation.").) The Court therefore granted Spectrum's motion to dismiss. (*Id.*, PageID.149; *see also* ECF No. 22, PageID.77.) But because it was "at least imaginable" that Rivers Bend could develop its allegations sufficient to state a plausible claim of attempted monopolization, the Court granted Rivers Bend leave to replead. (ECF No. 29, PageID.148-149; *see also* ECF No. 22, PageID.77.)

In granting Rivers Bend leave to replead, the Court noted that developing its factual allegations so as to state a plausible claim of attempted monopolization would entail "significant work." (*Id.*, PageID.148.) The Court specifically noted that one element of attempted monopolization is a dangerous probability of achieving monopoly power, and that to evaluate whether Rivers Bend plausibly alleged that element, the Court needed information regarding the nature of the relevant market.

5

(*Id.*)  Rivers Bend filed its second amended complaint on December 1, 2023 (ECF No. 23), and Spectrum moved to dismiss that complaint on January 12, 2024 (ECF No. 24).

## IV.    Dismissal Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim will have facial plausibility when the plaintiff pleads factual allegations that allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  A plaintiff's obligation to provide the grounds of their entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555.

A court must accept as true all of the allegations contained in a complaint, unless they are legal conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Twombly*, 550 U.S. at 555.

V.   Analysis

As set forth above, Rivers Bend alleges that Spectrum attempted to monopolize the cable, phone, and internet services providers market by refusing individual services to Rivers Bend's guests after Rivers Bend terminated its commercial contract with Spectrum.[2]  (ECF No. 23, PageID.81.)  In moving to dismiss, Spectrum essentially argues that Rivers Bend's second amended complaint suffers the same flaws that led this Court to dismiss its first amended complaint.  Spectrum says that Rivers Bend fails to plausibly allege a dangerous probability of Spectrum achieving monopoly power in the relevant market.  (ECF No. 25, PageID.99.)  Furthermore, Spectrum contends that Rivers Bend fails to allege a plausible antitrust injury sufficient to establish antitrust standing.  (*Id.*, PageID.102-103.)  For the following reasons, the undersigned agrees.

   a.  **Attempted Monopolization**

Section 2 of the Sherman Act makes it unlawful to monopolize, or attempt to monopolize, any part of the trade or commerce among the states.  15 U.S.C. § 2.  The

---

[2]   It is worth noting that in its second amended complaint, Rivers Bend alleged that Spectrum is effectively "tying" its guests' services to a mandate that Rivers Bend maintain commercial services with Spectrum. (ECF No. 23, PageID.82.) "Tying" is a term of art in the realm of anti-trust law.  Section 1 of the Sherman Act prohibits agreements "in restraint of trade," including "tying" arrangements "where a seller with monopoly power in one product (the tying product) uses that power to force a buyer to accept a second (tied) product under anticompetitive conditions." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 506 (6th Cir. 1983).  But despite Rivers Bend's use of the term, it previously represented that it would not be asserting a claim under Section 1 of the Sherman Act. (ECF No. 29, PageID.138.)  And Rivers Bend clarified in its response brief that its second amended complaint advances only an attempted monopolization claim; it does not advance a "tying" claim.  (ECF No. 27, PageID.118-119.)

Act "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). To establish a claim of attempted monopolization, "a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Id.* at 456 (citing 3 Phillip Areeda & Donald F. Turner, Antitrust Law ¶ 617, pp. 39-41 (1978)).

"Monopoly power consists of the power to control prices or exclude competition." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) (quoting *Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986)). Without a defined market, "there is no way to measure [the defendant's] ability to lessen or destroy competition." *Spectrum Sports, Inc.,* 506 U.S. at 455 (alteration in original) (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). Thus, "[t]he first step in any action brought under § 2 of the Sherman Act is for the plaintiff to define the relevant product and geographic markets." *Conwood Co., L.P.*, 290 F.3d at 782; *see also Spectrum Sports, Inc.*, 506 U.S. at 455. "The relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks[.]" *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 260 (3d Cir. 1984) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).

Once a plaintiff defines the relevant market, the next step is to plead facts from which the Court can infer that the defendant possesses market power bordering on

8

monopoly power. *United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, No. 22-10228, 2024 WL 1349301, at *4 (E.D. Mich. Mar. 29, 2024); *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1117 (S.D. Ohio 2011) (citing *Conwood Co., L.P.*, 290 F.3d at 782.). This typically involves allegations of the defendant's market share, or "other factors such as concentration of market, high barriers to entry, consumer demand, strength of the competition, or consolidation trend in the market." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 490-91 (5th Cir. 1984) (collecting cases). "If the alleged monopolist does not possess enough potential power in the relevant market to harm competition, a Section 2 claim cannot be made out." *United Wholesale Mortg., LLC*, 2024 WL 1349301, at *4.

In its second amended complaint, Rivers Bend defines the relevant product market as "the market of cable, phone, and internet service providers." (ECF No. 23, PageID.82.) Although it alleges that its campground is "located in a very rural area in northern Michigan where options for cable, internet and telephone services are very limited",[3] Rivers Bend goes on to define the geographic market as "any geographic area in which cable, internet and/or phone services are provided." (*Id.*, PageID.80, 82.) Defendants argue that the proposed geographic market is facially

---

[3]    In an affidavit attached to Rivers Bend's response in opposition to Spectrum's motion to dismiss, the President of Rivers Bend further reported that although there are eleven cable, phone, and internet providers that service the Iron Mountain area, only Spectrum will service Rivers Bend's campground. (ECF No. 27-1, PageID.124.) Indeed, the affidavit states that when Rivers Bend attempted to switch to the services of Verizon Wireless, the services did not work. (*Id.*) Though noteworthy, the undersigned does not rely on this affidavit in coming to the ultimate recommendation.

9

implausible. (ECF No. 25, PageID.100.) But even were it not, Rivers Bend fails to plausibly allege a dangerous probability of Spectrum achieving monopoly power.

Rivers Bend asserts that Spectrum "is attempting to utilize its size, market share and power to cause as much discord between [Rivers Bend] and [Rivers Bend's] guests as possible so that [Rivers Bend] will reengage [Spectrum's] services." (ECF No. 23, PageID.81.) But Rivers Bend provides no factual allegations with respect to Spectrum's size, share, or overall power in the proposed market. *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818 (6th Cir. 1982) (explaining that market share alone is "not sufficient to establish . . . capacity to monopolize" and that the "real test" is whether the defendant "possessed sufficient market power to achieve its aims"). Rivers Bend therefore fails to plausibly allege that there was a dangerous probability of Spectrum achieving monopoly power by way of refusing to provide individual services to campground guests in the absence of a commercial contract with the campground.

Simply put, the second amended complaint may contain allegations of conduct that Rivers Bend considers unfair or predatory, but such allegations are alone insufficient to state a claim of attempted monopolization. *Spectrum Sports, Inc.*, 506 U.S. at 455 ("[T]he notion that proof of unfair or predatory conduct alone is sufficient to make out the offense of attempted monopolization is contrary to the purpose and policy of the Sherman Act.").

### b. Antitrust Injury and Antitrust Standing

Plaintiffs seeking to advance antitrust claims must establish both Article III standing and antitrust standing. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007). To reiterate, the Sherman Act is focused on conduct "which unfairly tends to destroy competition itself." *Spectrum Sports, Inc.*, 506 U.S. at 458. It is not focused on "conduct which is competitive, even severely so." *Id.* But, as recognized by the Supreme Court, "[c]onduct in violation of the antitrust laws may have three effects, often interwoven: In some respects the conduct may reduce competition, in other respects it may increase competition, and in still other respects effects may be neutral as to competition." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 343 (1990). Requiring a plaintiff to establish antitrust standing ensures that the plaintiff does not recover for the neutral or pro-competitive effects of an antitrust violation, contrary to the purpose of the Act. *Id.*

While there are various requirements for establishing antitrust standing, Spectrum focuses its motion to dismiss on antitrust injury. (ECF No. 25, PageID.101-103.) Antitrust injury is a "'necessary, but not always sufficient,' condition of antitrust standing." *NicSand, Inc.*, 507 F.3d at 450 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986)). To sufficiently plead an antitrust injury, a plaintiff must plausibly allege an "injury of the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). As such, a plaintiff "must allege, not only an injury to himself, but an injury to the market as

well." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 434 (6th Cir. 2008) (quoting *Banks v. Nat'l Collegiate Athletic Ass'n*, 977 F.2d 1081, 1088 (7th Cir. 1992)).

In its second amended complaint, Rivers Bend alleges that "[e]ffectively 'tying' [Rivers Bend's] guests' services to a mandate that [Rivers Bend] maintain commercial services with [Spectrum] is conduct intended to improperly reduce competition and increase Defendant's profits and market share."[4] (ECF No. 23, PageID.82.) Rivers Bend alleges that "[Spectrum's] anticompetitive conduct has and will continue to injure the competitive process and deter and exclude competition in the relevant market." (ECF No. 23, PageID.82.) It further alleges that "[b]y reason of the unlawful conduct of [Spectrum]" Rivers Bend suffered "injury and loss to its business and property" including the loss of goodwill of its customers and harm to its professional reputation. (ECF No. 23, PageID.83.) The undersigned has little difficulty opining that these allegations are conclusory and therefore insufficient to establish a plausible antitrust injury. *NicSand, Inc.*, 507 F.3d at 450 ("A 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' an antitrust injury." (quoting *Twombly*, 550 U.S at 557)).

Rivers Bend provides no specific allegations with respect to an injury to competition in what it identifies as the relevant market: the market of cable, phone, and internet service providers in "any geographic area in which cable, internet and/or

---

[4]    It bears repeating that Rivers Bend's complaint does not set forth a tying or leveraging claim under Section 1 of the Sherman Act. (ECF No. 27, PageID.118-119.)

phone services are provided." Rivers Bend does not allege facts suggesting that Spectrum's policy of refusing to provide individual services to campground guests without a commercial contract with the campground has "reduced output, increased prices, or decreased quality in the relevant market." *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018). Nor does it allege facts suggesting the actual exclusion of competitors. Furthermore, Rivers Bend does not plausibly connect the loss of goodwill of its customers or harm to its professional reputation to such anticompetitive effects. It may be that Rivers Bend fears a loss of customers in this particular instance, and therefore feels pressure to re-engage with Spectrum.[5] But there is simply nothing in Rivers Bend's second amended complaint to suggest that Spectrum's policy has anticompetitive effects on the market.

Ultimately, this Court warned Rivers Bend that developing allegations "that would ripen into a *Twombly* plausible attempt to monopolize case" would entail "significant work." (ECF No. 29, PageID.148.) In the undersigned's opinion, Rivers Bend has not done that work.

## VI.  Recommendation

The undersigned respectfully recommends that the Court grant Defendant Spectrum's motion to dismiss (ECF No. 25) because Rivers Bend's second amended complaint fails to state a claim upon which relief can be granted. Rivers Bend failed

---

[5]  It is worth noting that the services that Rivers Bend opted to engage after ending its commercial contract with Spectrum did not work, presumably leaving Rivers Bend's guests without any cable, phone, or internet service at all. (ECF No. 27-1, PageID.124.) Although they do not factor into the undersigned's recommendation, those circumstances are no fault of Spectrum.

13

to plead facts sufficient to state a plausible claim of attempted monopolization. And Rivers Bend failed to plead a plausible antitrust injury sufficient to establish antitrust standing.

If the Court accepts this recommendation, this lawsuit will be dismissed.

Dated:  August 15, 2024                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).